Okay, each side will have 10 minutes for argument. I understand that the appellees are wanting to split some of their time. You'll be required to manage the clock, and if the first person arguing runs into the second person's time, then that's just going to be what it is. We're not going to split the time for you, but you can watch your own time and then divide it as you wish. And Mr. Thompson, if you'd like to reserve some time for rebuttal, you may do so, but please keep time for yourself. Thank you. You may begin when you're ready. May it please the Court. My name is Russell Thompson, and I represent Ryan Six. Six challenges multiple orders on appeal, but I'll begin with discussing why the District Court erred in granting IQ summary judgment on the basis that Six suffered an intangible harm similar to intrusion upon seclusion. In analyzing intangible harms for standing, the Supreme Court directs courts to give deference to Congress' judgment in identifying and elevating an intangible harm to one worthy of statutory protection, two, to determine the kind of harm and if it has a close relationship to a typical type of harm, and three, that courts must not require an element-for-element perfect match. The Constitution empowers Congress to decide what degree of harm is sufficient, so long as that is similar in kind to something found at common law. Does the standing analysis change at all by the fact that Mr. Six actually sent a letter requesting documentation of the debt, that he invited communication? If he had invited communication, it might change the standing, but in this situation, Mr. Six did not send any letter to IQ. Mr. Six sent a dispute letter to a credit bureau to dispute a debt that was reported on his credit report. That was by a different counsel that was representing him with respect to the debt prior to I only became involved in the lawsuit, but my understanding is the reason for that is that credit bureaus can simply reject disputes from credit repair companies as frivolous so that they're sent often in the name of the consumer, but taking a look at the letter itself that I think we point to in the reply brief, it's very clearly directed to the bureau and not to IQ data. It's asking for a response from the credit bureau, and that's simply how the Fair Credit Reporting Act works anyway. You dispute with the credit bureaus, the bureaus send that investigation to the bureau, who then responds to the consumer. The other thing that I think is important here is to look at the actual letter that IQ sent. The offending letter is not a response to a dispute. It doesn't provide any verification of a debt. If you look closely at it, it's an initial correspondence under the Fair Debt Collection Practices Act. It has the initial notices required by Section 1692 GA that are required to be sent in an initial communication or in writing within five days after. It contains the E11 language known as the mini Miranda that's required in every initial communication with a consumer. This is just an ex post facto argument to try to avoid liability here, but it's very clear that IQ data was not responding to any request to a dispute. They were sending a collection letter thinking it was the initial communication being sent to him. And if I may jump to a different issue, because you have short time. One of the issues that you raise is whether the district court incorrectly converted the motion for partial judgment on the pleadings into something else. And my question is why the ruling on that motion has any relevance, because discovery was completed, motions for summary judgment were filed. So why didn't that just kind of get overtaken by events and such that we don't have to decide that question? Well, I think the motion for judgment on the pleadings was a crucial point in the case. It kind of involves the sanctions at issue here as well, because it was only filed to push the issue of Rule 11 and whether Mr. Six had standing outside of the threat of Rule 11 motions. By the time it was filed, the pleadings had been closed, and these accusations of Rule 11 violations were just hanging there over and over. I think the district court opines in one of the transcripts, you know, you keep raising it, you keep threatening it, and I haven't seen a dispositive motion on it. So what relevance does that have now that we've gone past that? I guess that's what I'm wondering. Why do we have to figure out whether the specific procedure of calling one thing another thing matters anymore? I mean, at the end of the day, I don't think it's the most important issue on appeal. Why isn't it sort of gone now that we're at the end? Simply to avoid it in the future and to clarify the standard for pleading affirmative defenses. One of the arguments we make is that Twombly and Iqbal apply to affirmative defenses and that that's relevant because people, defendants assert numerous defenses, give no basis, and there's a limit of 25 interrogatories. So you really have to Is the relief that would be granted by a motion to strike an affirmative defense any different from the relief that would be granted through a motion for partial judgment on the pleadings? I think maybe there's more entitlement to amend on a motion to strike. A motion to strike can only be filed within certain time limits, and at the time the motion for judgment on the pleadings was filed here, it was 53 days, I think. You were asking essentially to strike the affirmative defenses that were in the answer that you felt were not sufficiently, that didn't have any, the failure to state a claim, right? There were, I think, five different affirmative defenses that you were seeking to get judgment on. So the relief would have been the same whether it was treated like a motion to I think they would potentially have a much better argument for a leave to amend on a motion to strike because it could be more of a, on the motion to strike it's more of a failure to state a claim sort of a thing, and judgment on the pleadings, seeking a judgment. You know, many years ago in an unrelated matter it was similar to a counterclaim. We kept filing motions to dismiss, they kept getting granted, they kept amending. Eventually you have to move for judgment on the pleadings and get some finality on it. Okay, so what standard of review should this court apply when determining whether a district court properly construed a motion for judgment on the pleadings as a motion to strike? Well, in determining the resolution of a motion for judgment on the pleadings our understanding is those are reviewed de novo. But I think even under an abuse of discretion, the court abused its discretion. It was not moved under that rule. We specifically opposed that in reply. And as discussed, we couldn't have even filed a proper Rule 12-F motion at the time because it was precluded by the federal rules. If I can, I'll just, I guess, reserve the remaining three minutes. Okay, thank you. Ms. McManus. Good morning. May it please the court, my name is Erin McManus on behalf of IQ Data. And I would like to reserve three minutes of my time for my co-counsel as I would be addressing the first issue and answering questions as it relates to the other issues on appeal. But I obviously can answer questions as well if something comes up. And before I start on the substantive arguments that I would like to address, I do think it's important that I address something that was in Six's reply brief as I think it's pertinent for the application of fact to law. On page nine of the reply brief, Six asserts that when IQ Data sent him a letter in the mail, that Six received a text slash push notification on his cell phone. And I just want to clarify that that's not what the record reflects in this matter. And that's not what he, when he cites to the deposition of Six, he starts on page 89 of the deposition, and there's no mention of any push or text notification. But the deposition page immediately preceding that discusses that Six testified that he receives an email through the postal service when a letter is received. He never testified as to any text or push notification. And while the full deposition transcript was not part of the record, but as this was brought up, we certainly would be able to provide that to the court if the court feels is necessary. But as it relates specifically to the issue of standing, we believe that the district court correctly found that there was no concrete injury here. And that's mainly for three specific reasons. First, the injuries that were alleged, to the extent injuries were suffered at all, were emotional injuries. And as this court has previously found, emotional injuries are not sufficient to confer standing pursuant to an FDCPA case as the Adams case that was specifically referenced in our brief. And the second issue that the district court correctly determined that Six did not suffer a concrete injury and therefore had no standing was pursuant or based on the injuries alleged by Six. He would also need to show that IQ data was the proximate cause of those injuries. And the record reflects that to the extent Six was injured, the injuries were relating to the underlining debt itself, not the violation that was alleged in the complaint, which was that IQ data inappropriately sent a letter to Six. And third, the larger reason is that while it is possible and it is can, intangible injuries can be elevated to a tangible injury sufficient to confer standing on a concrete injury. But for that to happen, the injury must be so closely related or akin to the type of injury that is addressed and heard by the court system. Now Six asserts that receiving a letter in the mail was an invasion of privacy, specifically intrusion upon seclusion, but we believe the district court correctly found that that is not the case. Now we know that Six in his briefings cite to the Hall case, but we believe that holding is misstated. In fact, that Six asserts that the receipt of an unwanted communication is enough to confer standing. But what the holding in the Hall case actually said, it was a telephone commuter, TCPA action, and the holding was that when somebody was on a do not call list, the receipt of phone calls or text messages in that case was specific to confer standing. There is no mention or discussion of any letter that was being sent. However, we believe that the district court correctly applied the other circuits in this case, specifically the Seventh and Eighth Circuit and the holdings there, the Ojaba case and the Puccio case that we cite, and those cases found that the receipt of a letter was insufficient to confer standing because that's not closely similar or related to an invasion of privacy matter. Because when you receive a letter in the mailbox, do you retrieve that letter from the mailbox? Do you go at a time convenient for you? I mean, to the extent you even want to go to the mailbox that day to retrieve a letter. »» Is that a fair distinction, though? Suppose instead of a single letter, which is what happened here, and potentially not even intentionally, although that issue is not before us, that's one thing. But what if you get daily letters from a creditor, one after another after another, and you receive a letter from another, and you don't even open them? But isn't that potentially a cause of stress or invasion of your personal space? »» Yeah. In all the cases discussed, it is fact specific based on that. So I mean, I do think if you're potentially receiving a letter every day for two weeks, three weeks, or possibly even a shorter period, that would possibly be sufficient to confer standing. But I believe the cause of action would be a different violation than what was alleged. »» We're not to look at whether or not there's a difference in the degree of the annoyance or the intrusion, but just whether the kinds are similar. So a phone call similar to mail, and I think the argument you make, which is mail is somehow different in kind because you choose not to go get the mail, I mean, doesn't that also apply for a phone call? You can choose not to answer the phone? »» You can choose not to answer a phone. I mean, to the extent you've had your phone turned off or you remove it from the receiver, you obviously aren't going to know per se that there has been a phone call. But most of the cases reference and distinguish that you're still going to get maybe a beep notification or your cell phone, it starts calling you and still interrupting your day to the extent you were, you know, at work, you're getting these notifications on your phone. »» To that point, counsel, and I know that you made comments earlier about they said this, but it wasn't in the record. I'm just giving you a hypo here. What if the individual does get pings on their phone whenever they get an email? And one of those emails is from the United States Postal Service, informed delivery I think is what it's called, saying, hey, you have mail. And so it's popping up. And so they click on it and they see, because those are generally scanned to you, so you actually see the letter. And they see that it's from a collection agency. Does that make it any different than a text message? That there is no photograph in a text message, presumably. It's just the text of, hey, we're calling you on a debt collection. Please be advised that everything you say to us will be recorded and may be used against you, whatever. But here, they're actually getting a photograph. They see it. Is that different? »» It would be different and possibly bring in the cases that more discuss the text messages, because a push notification, you are getting an alert, but you sign up for push notifications, or you can disable them on your phone. »» You can disable a text. You can put it on silent. »» You can disable to receive text messages at all. And if that was the case, I do think the line of cases would be more applicable to what would be the text message and phone call cases. But since that wasn't what happened here, I think it stays in the receipt of letter category. And I would like the remaining almost a minute and a half for my co-counsel. »» May it please the Court. I'm Amber Van Vranken for IQ Data. I wanted to quickly address two of the questions that you had asked Mr. Thompson. First one is whether the communication that was sent out from SIX directly does invite the response. I think that it does. I think that CFR 1006.6B2 addresses that. It specifically states that when a consumer initiates the communication, then there's an ability to respond. And then the definition of communication is conveying the information indirectly or directly to any person. So I think the definition of communication as well as that regulation allowed this letter to go through. Additionally, I wanted to address the motion for a judgment on the pleadings issue. I do think the district court properly converted that. First of all, the request in that motion was only asking for dismissal of some but not all. »» What's the standard of review on appeal for analyzing the district court's construction of the judgment on the pleadings motion as a motion to strike? »» I think because it was properly converted, that it would be a the standard would be abuse of discretion because of the proper conversion. If it was improperly converted or if it should have been a motion for a judgment on the pleadings, then it might be the other standard. But because it was proper, it's an abuse of discretion. And then the reason it's proper is because it only asked for dismissal of some but not all of the affirmative defenses. And so you can't even get a judgment if he got the full relief he had requested. »» Thank you. »» I think it's important that counsel conceded that the frequency of the letters matter. If they sent letters every single day, if they sent them weekly, that that could confer standing. »» Let me ask you something that appears in the district court's opinion and ask you to respond to it. One of the things that the court said was that the deposition of your client demonstrated that all of the harm that he suffered related to the underlying debt and not to the receipt of the letter. So if that's true, even if there's a theoretical opportunity to have standing in this situation, why wouldn't that be the absence of harm that would defeat standing? »» Well, he would still have, if you're trying to get at the tangible harm, he would still have intangible harm via the intrusion upon seclusion. »» That's why I'm asking you whether the court was accurately describing the deposition. The court said that all of the harm he suffered, the stress, the anxiety, the I can't sleep, the anger, related to the underlying debt only and not to the receipt of a letter concerning the debt. »» Sure, with respect to the tangible harm, with respect to. »» No, but you're not answering my question. I'm asking about what your client testified to in his deposition about what caused him the intangible harms of stress and sleeplessness and whatnot. Was it the underlying debt only that caused him those harms? »» No, of course not. He knew about the underlying debt. He hired counsel for the underlying debt. »» Right, but what did he say about what was causing him harm? »» He said he got the letter and he read it and he got angry and he yelled and he took a day off from work and he struggled with sleeplessness and he struggled with his appetite. And I think a lot of it arises because of what the debt was for. He obviously didn't think he owed the debt. It arises from an apartment with his ex-wife. So it brings up all these feelings. I think maybe one of the examples we put in our thing in here is that's what debt collectors do. They increase the emotional burden of not paying a debt because by the time it's in collections, they've already deprioritized that debt because they have limited funds. So collectors want to increase that emotional burden by saying, you know what? I can't stand these letters and calls anymore. I'm just going to pay it so I don't have to think about this time in my life and everything that goes around. But he didn't get angry and yell because, oh, it's about this debt. He got angry and yelled, why am I reminding of this? Leave me alone. Why are you continuing to hound me, especially where I have an attorney? And Congress recognized that. Congress said, you know, listen, you have an attorney. Don't contact the consumer directly. Consumers are very susceptible to these things. They're abused. They're regularly harassed. And that's a problem. And when you hire an attorney, they shouldn't be allowed to circumvent them to get around it because that's what they're trying to do, increase that emotional harm, demand payment, get them to pay, get them to not pay another bill instead, and get their money. And that's exactly what Congress wanted to avoid in enacting 1692 C.A. 2. So for those reasons and as detailed in our briefing, we'd request the court reverse. Thank you. Thank you, counsel. This matter is now submitted.
judges: GRABER, DESAI, ALBA